IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| **KRISTEN BRUCKI,** <br> 804 Edgewater Avenue <br> Ocean City, Maryland 21842 <br><br> *Plaintiff,* <br><br> v. <br><br> **B&P ENTERPRISES, INC.** <br> **d/b/a Purple Moose Saloon** <br> 108 S. Boardwalk <br> Ocean City, Maryland 21842 <br> **Serve: Robert H. Taylor** <br> **Resident Agent** <br> **9800 Mooring View Ln #1** <br> **Ocean City, Maryland 21842** <br><br> *Defendant.* | * <br> * <br> * CIVIL CASE NO._____ <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff Kristen Brucki through counsel makes this Complaint against her former employer B&P Enterprises, Inc. d/b/a The Purple Moose Saloon ("Purple Moose"). Ms. Brucki, a biological female who identifies as a female, was discriminated against because of her sex, paid less than her male counterparts, and wrongfully suspended and terminated for being a female and for making protected complaints of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII") and § 20-606 of the State Government (S.G.) Article of the Maryland Annotated Code ("MFEPA"). Ms. Brucki seeks declaratory and injunctive relief, awards of compensatory and punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this action asserts violations of rights secured by the laws of the United States. This Court has supplemental jurisdiction over Ms. Brucki's state claims, which are pendant to her federal claims.

2.      Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as the events giving rise to the claim occurred in the District of Maryland, and there is no other district in which this action may be brought.

3.      Prior to bringing this action, Ms. Brucki timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation. The EEOC issued Ms. Brucki a Notice of Right to Sue dated August 23, 2022, a copy of which is attached as **Exhibit A**. The parties subsequently entered into a Tolling Agreement, a copy of which is attached as **Exhibit B**. Ms. Brucki files suit within the deadline extended by the Tolling Agreement.

## PARTIES

4.      At all times relevant to this Complaint, Ms. Brucki was an employee of the Purple Moose and a resident of Ocean City, Maryland.

5.      B&P Enterprises, Inc. is a Maryland Corporation formed April 27, 2021. It was Ms. Brucki's "employer" as defined by Title VII and MFEPA. B&P Enterprises, Inc. acquired the Purple Moose from G&G Enterprises, Inc. in the fall of 2021, after the sole stockholder of G&G Enterprises, Inc., Gary A. Walker, passed away. Mr. Walker, through his corporation G&G Enterprises, Inc., opened and operated the Purple Moose, a classic rock nightclub located on the Boardwalk in Ocean City, Maryland. Robert H. Taylor had been a bartender of the Purple Moose since 2005 and general manager since 2010 and acquired the Purple Moose through B&P Enterprises, Inc., having purchased the business from the Estate of Mr. Walker. At all times

relevant to this suit, Mr. Taylor exercised direct control over Ms. Brucki's wages, hours worked, and terms of employment.

## FACTS COMMON TO ALL COUNTS

6.      Ms. Brucki is a career bartender, having worked more than fifteen years in the hospitality industry.

7.      In March of 2018, Mr. Taylor, who was then-general manager of the Purple Moose, hired Ms. Brucki as a full-time bartender (or so he told Ms. Brucki to entice her to accept the offer of employment).

8.      The Purple Moose has been an iconic rock bar on the Boardwalk in Ocean City since 1975. Despite the passage of more than forty-five years, the original purple shag carpet remained on the floor until 2022.

9.      The Purple Moose has two bars: a large full-service main bar ("main bar") that is "manned" by three bartenders and a smaller bar tucked toward the back and off to the side ("side bar"), which has less inventory and can accommodate substantially less customers.

10.     Despite the fact Mr. Taylor hired Ms. Brucki as a full-time bartender, Mr. Taylor forced Ms. Brucki to work exclusively in Purple Moose's boutique for three months selling t-shirts and other merchandise before finally placing Ms. Brucki behind the *side* bar, albeit part-time, while Ms. Brucki continued to work primarily in the boutique.

11.     When customers and staff alike saw Ms. Brucki working behind the side bar they remarked, "Purple Moose never hires female bartenders."

12.     Indeed, Ms. Brucki was the only female "bartender" employed by the Purple Moose.

13. Purple Moose's boutique was staffed exclusively by female employees, while Purple Moose's bartenders, barbacks, and security personnel were virtually all male. Purple Moose employed one female manager, who confided in Ms. Brucki that Mr. Walker and Mr. Taylor did not like to hire women because they believed women were "dramatic."

14. It was not until June 2019 that Mr. Taylor finally scheduled Ms. Brucki to bartend full-time.

15. None of the other the male bartenders were forced to work in the boutique before working behind the bar full-time. (In fact, in 2021, Mr. Taylor hired a male bartender who Mr. Taylor immediately scheduled to bartend at the *main* bar).

16. Even after Mr. Taylor scheduled Ms. Brucki to bartend full-time, Mr. Taylor blocked Ms. Brucki from working the main bar and scheduled her to work the slower and less lucrative shifts.

17. During the height of the pandemic in the summer of 2020, Mr. Taylor forced Ms. Brucki to work a carry-out drink window. Ms. Brucki was the only bartender forced to work the carry-out window, at a significant loss of earnings.

18. As a result of Mr. Taylor's scheduling decisions, Ms. Brucki estimates she made at least $50,000 per year less than the male bartenders at the Purple Moose.

19. Ms. Brucki continued working for the Purple Moose because Mr. Taylor promised Ms. Brucki he would make her a manager if she continued to outperform. Despite the fact Ms. Brucki was not given the same opportunities as her male counterparts, she consistently rang just as much or more in alcohol sales than all other bartenders, except Mr. Taylor, who reserved the "prime real estate" of the main bar to himself during peak hours.

20. However, matters came to a head Saturday, March 26, 2022, when an intoxicated male customer called Ms. Brucki an "ugly fat cunt" and continued to belittle and harass Ms. Brucki, who was working behind the side bar. Ms. Brucki informed Purple Moose's management, who failed to intervene or take any action. Eventually, Ms. Brucki threw water from a cup onto the customer in order to get him to leave the bar, and continued to work her shift without further incident.

21. The following day, Sunday, March 27, 2022, Ms. Brucki was off from work. That morning, Mr. Taylor called Ms. Brucki's friend, who happened to be at Ms. Brucki's home, to report Ms. Brucki was going to be arrested for the incident involving the intoxicated customer. Ms. Brucki then spoke to Mr. Taylor by phone and told him what had happened on her shift and offered to complete an incident report.

22. The March 26, 2022 incident was not the first time a bartender or employee of the Purple Moose had gotten into an altercation with an intoxicated customer. In fact, one week prior, a male bartender had physically injured an intoxicated customer, but was not questioned, threatened with arrest, or disciplined by Mr. Taylor. Until the March 26, 2022 incident, Mr. Taylor had always supported the Purple Moose employees (all of whom had been male) over the intoxicated customer. When Ms. Brucki pointed out the disparity in treatment, Mr. Taylor hung up the telephone on Ms. Brucki.

23. Upset, Ms. Brucki then called Tom Kuser, one of Purple Moose's managers, to complain. They agreed Ms. Brucki would fill out an incident report at the Purple Moose the following day, Monday, March 28, 2022, which was also Ms. Brucki's day off.

24. On March 28, 2022, Ms. Brucki met with Paulette Burrier, the sole female manager, to complete the incident report. Ms. Brucki told Ms. Burrier that she was tired of Mr. Taylor's threats and lack of support, and confessed she was thinking about contacting the EEOC.

25. At this, Ms. Burrier yelled, "You will never work in this town again if you contact anyone about this. Do you want to cause us another incident like Maria did?", implying a former female employee by the name of "Maria" had asserted similar claims against the Purple Moose.

26. Ms. Brucki does not know "Maria," and did not work with "Maria." Based upon comments made during Ms. Brucki's employment at the Purple Moose, Ms. Brucki has reason to believe that "Maria" had been employed as a bartender and had complained of discrimination.

27. Following her meeting with Ms. Burrier, Mr. Kuser informed Ms. Brucki that Mr. Taylor had suspended her without pay for two weeks.

28. Ms. Brucki protested her unpaid suspension as discriminatory.

29. While on suspension, Ms. Brucki contacted the EEOC and submitted an "Inquiry Form." Ms. Brucki retained a copy of that form and planned to provide a copy to Mr. Taylor when she returned to work.

30. Ms. Brucki returned to work April 15, 2022 and worked the full day without incident. Ms. Brucki was unable to deliver the completed EEOC Inquiry Form to Mr. Taylor that day.

31. On the following day, April 16, 2022, Ms. Brucki reported to work before 11:00 a.m., as scheduled. She worked alongside Bryan McMillian, a male bartender, who appeared upset Ms. Brucki had complained about her mistreatment arising from March 26, 2022 incident. Mr. McMillian confessed to Ms. Brucki that she had been excluded from an all-male employee group text thread since October of 2021, which discussed work and other matters.

32. At 3:45 p.m., Ms. Brucki asked Mr. Taylor to meet with her privately on the Boardwalk. Ms. Brucki handed Mr. Taylor a sealed envelope containing the completed EEOC Inquiry Form, a copy of which is attached as **Exhibit C**, and told him she "did not believe in doing anything behind his back" and wanted him to know she had contacted the EEOC about her complaints of discrimination.

33. Mr. Taylor took the envelope without comment, went back inside of the Purple Moose, and summoned Mr. Kuser, Ms. Burrier, and Steve Stiles, another manager, into a meeting in the basement.

34. Ms. Brucki returned to working at the bar, but could hear Mr. Taylor yelling in the basement.

35. At 4:50 p.m., before the conclusion of Ms. Brucki's shift, Mr. Taylor sent Mr. Kuser to tell Ms. Brucki that her "services were no longer needed." Mr. Kuser then escorted Ms. Brucki off of the premises.

36. Following Ms. Brucki's termination, Mr. Taylor has defamed Ms. Brucki throughout the hospitality industry in Ocean City.

37. Ms. Brucki has suffered economic and non-economic losses, loss of prestige, and emotional distress accompanied by physical conditions as a result of the Purple Moose's discriminatory and retaliatory practices.

38. The Purple Moose's discrimination and retaliation against Ms. Brucki was intentional, malicious, and in reckless disregard of Ms. Brucki's civil rights.

## CAUSES OF ACTION

### COUNT I
### RETALIATION UNDER TITLE VII AND S.G. 20-606

7

## AGAINST THE PURPLE MOOSE

39. The facts alleged in paragraphs 1-40 are incorporated by reference.

40. Ms. Brucki made a series of objectively reasonable complaints of gender discrimination to the Purple Moose's management which culminated in her unpaid suspension and swift termination. Indeed, Mr. Taylor terminated Ms. Brucki just one-hour after receiving a copy of her completed EEOC Inquiry Form.

**WHEREUPON**, Ms. Brucki respectfully requests this Honorable Court grant the following relief:

A. Enter a judgment in favor of Ms. Brucki and against the Purple Moose for compensatory and punitive damages;

B. Enter a declaratory judgment holding that the Purple Moose violated Ms. Brucki's rights under the laws of the United States and State of Maryland;

C. Enter an injunction compelling the Purple Moose to reinstate Ms. Brucki, and prohibiting the Purple Moose from further discrimination or retaliation against Ms. Brucki, or, in the alternative, compelling the Purple Moose to pay Ms. Brucki front-pay;

D. Assess reasonable attorneys' fees and costs of suit in favor of Ms. Brucki and against the Purple Moose; and

E. Grant Ms. Brucki such other and further relief as the nature of her cause may warrant.

## COUNT II
## DISCRIMINATORY COMPENSATION ON THE BASIS OF GENDER UNDER TITLE VII AND S.G. 20-606

41. The facts alleged in paragraphs 1-40 are incorporated by reference.

42. During her employment at the Purple Moose, Ms. Brucki was subject to sexist remarks by her superiors (she was frequently called "babe"), deprived of social and employment advancement opportunities (like attendance at a cocktail-themed party called "the Jameson Crush Fest"), and blocked from working busy and lucrative shifts at the main bar.

43. Ms. Brucki earned substantially less than her male counterparts because Mr. Taylor improperly based scheduling decisions on gender. Mr. Taylor always gave the male bartenders better shifts and the opportunity to work the main bar with the result they made substantially more than Ms. Brucki.

44. Ms. Brucki was just as qualified as her male counterparts and had she been given preferential scheduling like the male employees, she would have made substantially more money.

**WHEREUPON**, Ms. Brucki respectfully requests this Honorable Court grant the following relief:

A. Enter a judgment in favor of Ms. Brucki and against the Purple Moose for compensatory and punitive damages;

B. Enter a declaratory judgment holding that the Purple Moose violated Ms. Brucki's rights under the laws of the United States and State of Maryland;

C. Enter an injunction compelling the Purple Moose to reinstate Ms. Brucki, and prohibiting the Purple Moose from further discrimination or retaliation against Ms. Brucki, or, in the alternative, compelling the Purple Moose to pay Ms. Brucki front-pay;

D. Assess reasonable attorneys' fees and costs of suit in favor of Ms. Brucki and against the Purple Moose; and

E. Grant Ms. Brucki such other and further relief as the nature of her cause may warrant.

## COUNT III
## WRONGFUL SUSPENSION AND TERMINATION ON THE BASIS OF GENDER UNDER TITLE VII AND S.G. 20-606

1. The facts alleged in paragraphs 1-40 are incorporated by reference.

2. During her employment at the Purple Moose, Ms. Brucki was subject to sexist remarks by her superiors, deprived of social and employment advancement opportunities, and blocked from working busy and lucrative shifts at the main bar.

3. Mr. Taylor and the Purple Moose's senior management team did not apply policies fairly, but made personnel decisions illegally based upon sex, including, but not limited to, imposing an illegal unpaid suspension upon Ms. Brucki and terminating her employment.

_____
ROBIN R. COCKEY, Federal Bar No. 02657
ASHLEY A. BOSCHÉ, Federal Bar No. 28800
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
Phone: 410-546-1750
Fax: 410-546-1811
rrcesq@cbmlawfirm.com
bosche@cbmlawfirm.com
*Attorneys for Plaintiff*